IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BATINA ADKINS, Individually,
and as Next Friend and Guardian of
DRAVEN ROBERTSON,

                Plaintiffs,

v.                                              CIVIL ACTION NO. 3:12-0076

THE UNITED STATES OF AMERICA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Dismiss (ECF No. 23). For the reasons stated below, the Court **DENIES** the Motion.

**Statement of Facts**

Plaintiff Batina Adkins, acting individually and as next friend and guardian for her infant son Draven Robertson, commenced the instant litigation on January 17, 2012. Compl., ECF No. 1. Plaintiff alleges that Valley Health Systems, Inc. ("Valley Health"), and its employees provided prenatal care for Plaintiff during her pregnancy with Draven, including medical testing, and that "the testing indicated a significant potential risk of Draven Robertson experiencing ABO [blood] incompatibility." Compl. ¶ 5. These blood antibody testing results mean that a baby faces a high chance of being born anemic, resulting in brain damage and other potential medical problems, or even death. ECF No. 29, p. 2. Blood monitoring, however, coupled with early delivery and blood transfusions during pregnancy, can prevent these medical problems

from occurring at birth. *Id.* Valley Health, however, "negligently failed to promptly refer Batina Adkins to a high-risk obstetrics specialist, failed to complete appropriate laboratory testing for continued elevation of antibody titers, failed to observe and monitor Batina Adkins closely for biophysical profiles and ultrasounds, and failed to note and act upon the significance of, location of, and source of continued elevations of Ms. Adkins' white blood cells and other abnormalities." Compl. ¶ 6.

Draven was born on October 21, 2008, and immediately hospitalized for a variety of medical problems, for which he was eventually discharged on November 21, 2008. Plaintiff alleges that Valley Health's negligence in failing to address Draven's antibody problem directly and proximately caused the following injuries to Draven: bilateral basil ganglia infarctions, germinal matrix hemorrhages, brain damage, and significant permanent developmental delays. Compl. ¶¶ 7-8. Because Valley Health is a federally funded healthcare clinic, Plaintiff alleges that the United States is vicariously liable for the negligence of Valley Health employees. Plaintiff now seeks damages from the United States on behalf of herself and her son for this negligence.

Defendant United States filed the pending motion to dismiss, arguing that Plaintiff's negligence claim should be dismissed as time-barred. Defendant argues that Plaintiff was aware of her son's brain damage and other medical problems, as well as the cause of those injuries, no later than Draven's hospital discharge on November 21, 2008, and that Plaintiff's cause of action accrued on that date. Plaintiff's claim is subject to a two-year limit mandated under the Federal Tort Claims Act, 28 U.S.C. § 1346, et seq. ("FTCA"):

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim

> accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). Because Plaintiff's administrative claim was not filed with the Department of Health and Human Services until November 29, 2010,[1] over two years after the claim accrued, Defendant argues that Plaintiff's claim is untimely. Plaintiff responds that her cause of action did not accrue until January 2009, when she first learned that her son's injuries were iatrogenic (caused by a doctor), and that therefore her claim was timely filed under the FTCA. Plaintiff alternatively argues that her claim was tolled until at least November 23, 2009, based on the continuous treatment doctrine.[2]

The motion to dismiss first became ripe for disposition on December 28, 2012. Plaintiff shortly thereafter filed a motion requesting oral argument on the motion to dismiss, or alternatively leave to file a sur-reply brief. The Court granted such leave, and Plaintiff filed a sur-reply brief on January 11, 2013.

In Section I, the Court will discuss the standard of review applicable to this motion to dismiss. In Section II, the Court will examine the parties' arguments about when Plaintiff's cause of action accrued. In Section III, the Court will assess the possible application of tolling under the continuous treatment doctrine.

---

[1] Although the claim itself was dated November 29, it was not stamped as received until November 30. Using one of these dates rather than the other does not influence the outcome given the facts of this case.

[2] Plaintiff does not argue that her claim should be tolled due to her son's infancy. Indeed, the Fourth Circuit has found that "the Plaintiff's minority does not toll the § 2401(b) period." *McKewin By & Through Harrell v. United States*, No. 92-1770, 1993 WL 389568, at *2 (4th Cir. Oct. 4, 1993) (citations omitted) (unpublished decision).

## I. Standard of Review

Defendant's motion requests dismissal based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiff's claim is time-barred under the FTCA. However, because "compliance with the FTCA statute of limitations is a jurisdictional prerequisite," the substance of the motion in actuality is based exclusively on Rule 12(b)(1), which allows for dismissal based on lack of subject matter jurisdiction.[3] *See Bohrer v. City Hosp., Inc.*, 681 F. Supp. 2d 657, 663 (N.D. W. Va. 2010) (citations omitted) ("The United States' motion [to dismiss], therefore, should be evaluated pursuant to the standard set out in Federal Rule of Civil Procedure 12(b)(1)."). A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits.

Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id*. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*. On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in

---

[3] By the terms of the Rule, Rule 12(b) motions must filed before a responsive pleading is filed. Defendant's motion to dismiss was filed after Defendant filed its answer to the complaint, thus violating the Rule. However, because a case can be dismissed for lack of subject-matter jurisdiction at any time under Rule 12(h)(3), and the motion essentially is arguing that the Court lacks subject-matter jurisdiction, the Court will nonetheless consider the substance of Defendant's motion. *See Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983) (citations omitted).

the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."[4] *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citations omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).[5] Defendant's present motion to dismiss—challenging the date on which the claim accrued—is a factual attack rather than a facial attack. *See Bohrer*, 681 F. Supp. 2d at 663. The burden of showing the existence of subject matter jurisdiction rests on the plaintiff. *Id.* (citation omitted).

The Court notes that, as a general proposition, "the FTCA's limited waiver of sovereign immunity must be strictly construed." *McKewin By & Through Harrell v. United States*, No. 92-1770, 1993 WL 389568, at *1 (4th Cir. Oct. 4, 1993) (citations omitted) (unpublished decision).

---

[4] *Compare with Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (holding that if a motion implicates the merits of a cause of action, the district court should find jurisdiction exists and treat the objection as a direct attack on the merits of the plaintiff's case). *See also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (recognizing that "in those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute[,] [i]t is the better view that . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits" (citations omitted)).

[5] *See also Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (discussing difference between facial and factual attacks under Rule 12(b)(1)); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (same).

In "exceptional cases," however, equitable tolling may apply to claims subject to the FTCA. *Bohrer*, 681 F. Supp. 2d at 662. With this in mind, the Court now turns to the substance of Defendant's jurisdictional arguments.

## II. Date of Accrual of Plaintiff's Cause of Action

As the Fourth Circuit has stated, "[a] medical malpractice cause of action under the FTCA accrues when the claimant discovers both the injury and its cause." *McKewin*, 1993 WL 389568, at *2 (citing *United States v. Kubrick*, 444 U.S. 111, 123-25 (1979)). Also, "[t]he claimant need not be aware at the time of accrual that the injury may have been negligently inflicted." *Id.* (citing *Kubrick*, 444 U.S. at 123-25). For injuries to minors, "the cause of action accrues when the parent knows of the minor's injury and the cause thereof, for the parent's knowledge is imputed to the child." *Id.* (citation omitted). The claimant need only be aware of some form of the injury for the cause of action to accrue, and need not be aware of the full extent of the injury. *Bohrer*, 681 F. Supp. 2d at 666; *T.L. ex rel Ingram v. United States*, 443 F.3d 956, 962-63 (8th Cir. 2006).

The parties disagree at to what constitutes discovery of an injury's "cause," and therefore disagree over when Plaintiff's cause of action accrued. Defendant argues that Plaintiff discovered the cause of her son's injuries no later than November 21, 2008, when Draven was discharged from Cabell Huntington Hospital and an employee told Plaintiff that blood antibodies caused Draven's injuries. Plaintiff counters that although she did know in November that her son had experienced injuries, she did not discover that the injuries were the result of Valley Health's failure to address Draven's blood condition—and therefore did not truly know what caused her son's injuries—until January 2009, when Plaintiff's counsel reviewed the medical records.

This Court is persuaded that, when determining claim accrual for purposes of the FTCA, cases involving a failure to treat or diagnose or some other omission on the part of medical professionals should be distinguished from cases involving affirmative misconduct of medical professionals. FTCA medical malpractice cases based on a failure to treat and/or diagnose do not accrue until the individual knows or should know of the injury and the iatrogenic cause for that injury, that is, that the conduct of a medical professional played a role in the injury.

The Fourth Circuit applied such a rule in *Miller v. United States*, 932 F.2d 301 (4th Cir. 1991), where the executrix of a woman's estate brought a wrongful death action under the FTCA after the woman died of breast cancer. The woman had received a physical on June 1, 1983, and the doctor did not order a mammogram. The woman discovered that she had breast cancer on February 22, 1984, and underwent a mastectomy on March 9 of that year. On April 8, 1984, the woman wrote a note stating that "On 1 June 83, I had a physical .... In retrospect, a mammogram should have been ordered."  The woman died on April 9, 1986. In determining when the woman's cause of action accrued, the court of appeals noted that:

> The question under *Kubrick* and Virginia wrongful death law in combination is not . . . whether at the critical time [of April 8, 1984] Mrs. Petzak knew that she had a personal injury that would eventually cause her death, but only whether she then knew that she had *an* injury and, as is now alleged, an injury caused by the failure of Dr. Bomar to have diagnosed her condition in time to prevent or minimize the injury that she indisputably then knew to exist.

*Id.* at 304 (emphasis in original).[6] The court of appeals held that "this wrongful death claim based on failure to diagnose breast cancer in a timely manner accrued at the latest on April 8, 1984," the date on which the woman recognized the earlier failure to order a mammogram. *Id.* at

---

[6] Virginia wrongful death law was applicable in that state law allowed the executrix to bring a wrongful death claim, and its application does not upset *Miller*'s relevance to the present case.

306. Because the claim was time-barred based on that accrual date, it was unnecessary for the court to determine whether an earlier accrual date possibly applied, as the outcome would be the same regardless. This holding recognizes that, in cases involving a failure to diagnose, a cause of action does not necessarily accrue when the malady is finally diagnosed, but rather when the earlier failure to diagnose is discovered.

Other circuits have also addressed accrual under the FTCA when there has been a failure to treat or diagnose, and have recognized the special considerations that apply. For example, in *Arroyo v. United States*, 656 F.3d 663 (7th Cir. 2011), a baby contracted a bacterial infection from his mother's blood during birth. Because the mother went into labor more than a month prematurely, she had not yet been tested for Group B Streptococcus (GBS). The baby showed symptoms of GBS after birth, but doctors did not treat the condition, resulting in permanent severe brain damage. The court of appeals described the events that transpired afterwards:

> On July 11, 2003, Christian was discharged from Northwestern Memorial hospital. *At the time of discharge, doctors informed the Arroyos that Christian had suffered brain injuries and that the injuries were caused by his exposure to his mother's blood during birth*. The Arroyos were not told that Christian's injuries could have been prevented if the GBS infection had been treated at an earlier point in time. . . .
>
> In July of 2004, Christian's mother gave birth to her second son and it was at this time that she first heard about the use of neonatal antibiotics.

*Id.* at 666 (emphasis added). In discussing when the claim accrued, the court of appeals stated that:

> An FTCA claim accrues when: (A) an individual actually knows enough to tip him off that a governmental act (or omission) may have caused his injury; *or* (B) a reasonable person in the individual's position would have known enough to prompt a deeper inquiry. Thus, the proper way to determine when the statute of limitations for FTCA claims begins to run is a two-part inquiry that incorporates subjective and objective components. A plaintiff's claim accrues the first time the

8

>plaintiff knew, or a reasonably diligent person in the plaintiff's position, reacting to any suspicious circumstances of which he or she might have been aware, would have discovered that an act or omission attributable to the government could have caused his or her injury.

*Id.* at 669 (citation omitted). Applying this rule, the court of appeals noted that "[t]he fact that the Arroyos knew about the biological cause of Christian's injuries [at the time of discharge] . . . does nothing to establish that the Arroyos knew that there was also a malpractice-related cause." *Id.* at 671. Furthermore, upon discharge, a reasonably diligent person would not have been prompted to inquire into the possibility of negligence. *Id.* Therefore, the claim did not accrue, at the earliest, until the birth of the second son.

The Seventh Circuit reached a similar conclusion in *Drazan v. United States*, 762 F.2d 56 (7th Cir. 1985), where a man's November 1979 x-ray indicated he might have a tumor, and the accompanying radiology report suggested a follow-up examination, but no follow-up occurred. The next x-ray, in January 1981, showed a large tumor, and the man died shortly thereafter of lung cancer in February. The court of appeals noted that the case involved knowledge of concurrent harms:

>Lung cancer did kill him, but maybe only because the government had failed to follow up on the results of an x-ray examination. When there are two causes of an injury, and only one is the government, the knowledge that is required to set the statute of limitations running is knowledge of the government cause, not just of the other cause.
>
>The cause of which a federal tort claimant must have notice for the statute of limitations to begin to run is the cause that is in the government's control, not a concurrent but independent cause that would not lead anyone to suspect that the government had been responsible for the injury. The notice must be not of harm but of iatrogenic harm, though, as *Kubrick* holds, not necessarily of *negligent* iatrogenic harm.

*Id.* at 58-59 (emphasis in original). The court of appeals noted that, on remand, the critical

9

question would be when the victim's wife should have inquired into the government's possible role in her husband's death.

The Ninth Circuit discussed failure to diagnose at length in *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983). The court of appeals acknowledged *Kubrick* and *Davis v. United States*, 642 F.2d 328 (9th Cir. 1981),[7] which held that a medical malpractice claim accrues when the plaintiff knows or should have known of the injury and its cause. The court, however, also cautioned about applying those cases too widely:

> The holdings in *Kubrick* and *Davis* are instructive but cannot be applied mechanically to cases involving the failure to diagnose, treat, or warn. Both *Davis* and *Kubrick* involved situations in which some affirmative treatment administered by government doctors inflicted clearly identifiable injuries on their patients, *i.e.,* loss of hearing and paralysis. In each case, the *existence* of the injury was obvious, and the statute of limitations began to run immediately upon the discovery of its cause. In this case, however, Augustine does not claim that the affirmative actions of the Air Force dentists inflicted injury upon him, but rather that the *failure* of the dentists to diagnose and treat his condition or warn him of its seriousness led to the development of metastatic cancer.
>
> When a physician's failure to diagnose, treat, or warn a patient results in the development of a more serious medical problem than that which previously existed, identification of both the injury and its cause may be more difficult for a patient than if affirmative conduct by a doctor inflicts a new injury. Where a claim of medical malpractice is based on the failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.

---

[7] *Davis* and *Kubrick* did not involve omissions by doctors. In *Kubrick*, a man was treated for a leg infection, and several weeks later experienced hearing loss. The Supreme Court held that his claim accrued when he "was aware of his injury and its probable cause"; that cause was the leg's neomycin treatment. 444 U.S. at 118. In *Davis*, a man was given a polio vaccine, and became paralyzed within a month of the vaccination; the court of appeals held that the claim accrued a month after the vaccine was administered, when he knew the injury and its likely cause—the vaccine. 642 F.2d 328.

> …
> The issue of accrual in this case thus depends upon when and if plaintiff discovered or through the exercise of reasonable diligence should have discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating physical condition.

*Id.* at 1078 (emphasis in original) (citing *Davis,* 642 F.2d at 331).

Applying the reasoning above to the facts of this case, the Court finds that a genuine issue of material fact exists as to when Plaintiff's claim accrued, and Defendant has not shown that it is entitled to prevail as a matter of law. Plaintiff's claim was filed with the Department of Health and Human Services on November 29, 2010, and so the critical question is whether Plaintiff's claim accrued before November 29, 2008, two years earlier. Based on Plaintiff's deposition, by the time Draven was discharged from the hospital on November 21, 2008, she knew that Draven had been injured, and that blood anti-bodies caused his injuries. Batina Adkins Dep. 51-52, 57, Oct. 4, 2012. By that time, Plaintiff also knew that Draven had the same blood antibodies as Plaintiff's first son Gavin. Adkins Dep. 56-57. Gavin was born in 2005, and was documented as having a "rare blood disorder." At birth, Gavin had jaundice (high bilirubin levels), but at that time Plaintiff did not understand the cause. Batina Adkins Aff. ¶ 1, Ex. 5, ECF No. 29. Plaintiff explained her knowledge of Draven's injuries:

> At no time while I or my son Draven Robertson were in Cabell Huntington Hospital, or at any time thereafter, did any individual state or suggest that any of the problems suffered by Draven Robertson were related to the prenatal care I had received . . . or that the problems suffered by Draven could have been prevented .
> . . .
> Because I was given the credible explanation that my son Draven Robertson had been born with the condition that he suffered from, and because both of my children suffered from bilirubin or jaundice as a result of some type of antibody problem, this led me to believe that the problems suffered by my son Draven Robertson were genetic or inherited.

*Id.* ¶¶ 6-7. Plaintiff then explained that in January 2009 she began to wonder why Draven was

11

not recovering as Gavin had done, and that month sought legal assistance. It was not until consultation with a lawyer that she learned that failures in prenatal care may have caused Draven's injuries. *Id.* ¶ 11.

Based on assessment of the evidence, it appears to this Court that although Plaintiff knew that blood antibodies caused Draven's injuries, she had no reason upon discharge from the hospital to suspect that the injuries could have been prevented if not for the failure to diagnose or treat the antibody condition. Although her older son also had blood antibody problems, Plaintiff has represented that she did not know that medication and prenatal treatment could prevent injuries resulting from blood antibody problems, and no evidence has been presented to refute that lack of knowledge. Plaintiff sought legal advice within the same month that her suspicions about Draven's condition were aroused. Plaintiff's situation bears striking resemblance to that in *Arroyo*, where a baby contracted a bacterial infection from his mother's blood during birth, and is also similar to the other failure to diagnose/treat cases discussed above. Therefore, based on the evidence presently before the Court, the Court must conclude that Defendants are not entitled to prevail as a matter of law in having Plaintiff's claim dismissed as untimely. Although Plaintiff knew of the existence of an injury upon discharge from the hospital, Plaintiff has presented enough evidence such that a genuine issue of fact exists as to whether Plaintiff knew or should have known of the iatrogenic cause of that injury on that date.

Although Defendant pointed to many medical malpractice cases to support its arguments about accrual, those cases do not involve failure to treat or diagnose.[8] For example, the present case is distinguishable from that in *Ingram*. In that case, the court found that the claim for a child diagnosed with cerebral palsy at 18 months old accrued when the parents were told of her brain injury the day after birth, despite the fact that a doctor appraised the child as being developmentally fine at six months of age. In doing so, the court noted that "it would be impractical to conclude that the limitations period stops and starts depending on the diagnosis of each doctor who examines a patient after the occurrence of an injury." 443 F.3d at 963. Unlike *Ingram*, where the knowledge that the child had suffered a brain injury should have aroused the suspicions of the parents early on, prior to any assurances to the contrary, there appears to be no reason for Plaintiff to have suspected an iatrogenic cause for Draven's injuries earlier than she did, based on the evidence presented. The Court therefore finds such cases distinguishable from the present situation to the extent they discuss accrual under the FTCA.

Other cases cited by Defendant do not involve medical malpractice. *See Rotella v. Wood*, 528 U.S. 549 (2000) (in civil RICO claim arguing that a pattern of racketeering activity existed to keep patient under hospitalization, holding that accrual of civil RICO claim was not postponed until pattern was or should have been discovered); *Hensley v. United States*, 531 F.3d 1052 (9th Cir. 2008) (involving car accident on navy base where one driver was navy officer); *D.P. Muth v.*

---

[8] *See Kerstetter v. United States*, 57 F.3d 362, 364-65 (4th Cir. 1995) (daughter had operation and damage from operation later proved to be permanent; holding that injury accrued when parents learned that damage was permanent and that operation caused it, rather than later when parents learned precise medical explanation for the damage); *McKewin*, 1993 WL 389568 (involving injury during delivery when umbilical cord wrapped around baby's neck); *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738 (4th Cir. 1990) (holding that accrual occurs when claimant knows of injury and cause, rather than when claimant additionally learns that doctors involved were federal employees).

*United States*, 1 F.3d 246 (4th Cir. 1993) (involving property owner's claim for decrease in property value); *Skwira v. United States*, 344 F.3d 64 (1st Cir. 2003) (involving criminal conduct of nurse); *Zeleznik v. United States*, 770 F.2d 20 (3d Cir. 1985) (addressing accrual of parents' claim against Immigration and Naturalization Service where illegal alien left INS custody and then murdered their son); *Dyniewicz v. United States*, 742 F.2d 484 (9th Cir. 1984) (addressing Department of Interior's negligence in keeping highway open in midst of flood). The Court finds these cases largely unhelpful in understanding accrual under the FTCA in the present case.

In summary, Plaintiff's claim should not be dismissed as untimely based on the accrual date of the claim.

### III. Tolling Pursuant to the Continuous Treatment Doctrine

Plaintiff also argues that her cause of action is subject to the continuous treatment doctrine, and is therefore timely. The Fourth Circuit holds that the continuous treatment doctrine can toll medical malpractice claims subject to the FTCA, acknowledging that the doctrine "effectively trumps a rigid application of *Kubrick*'s first discovery rule." *Miller*, 932 F.2d at 304. The doctrine, when applied, means that:

> [T]he statute of limitations does not begin to run on a medical malpractice claim upon a claimant's initial discovery of an injury and its cause so long as the claimant remains under the "continuous treatment" of a physician whose negligence is alleged to have caused the injury; in such circumstances, the claim only accrues when the "continuous treatment" ceases.

*Id.* Also, the doctrine can only apply "when the treatment at issue is for the same problem and by the same doctor, or that doctor's associates or other doctors operating under his direction." *Id.* at 305 (citations omitted). The fact that all doctors involved in the treatment work for the

14

government is insufficient on its own to create a connection between the doctors such that the doctrine applies. *See id.*

In *Miller*, discussed in the previous section, the Fourth Circuit noted that when a woman with breast cancer was not aware of the failure to diagnose her breast cancer until April 8, 1984, her claim did not accrue until that date, and only treatment after that date could toll the claim for purposes of the continuous treatment doctrine. Next, the court of appeals noted that the cause of action was predicated specifically on the failure to find the cancer in time to treat it. Allegations of negligence in prescribing medications or detecting another tumor did not involve that "same problem," and did not constitute "continuous treatment" for purposes of the doctrine. *See Miller*, 932 F.2d at 305 & n.3 ("[T]he only later acts of negligence specifically identified in opposing the summary judgment motion have nothing to do with timely detection or arrest of the cancer . . . ."). Standing in contrast is *Otto v. National Institute of Health*, 815 F.2d 985 (4th Cir. 1987), where a patient filed suit against the government alleging negligent treatment of parathyroid tissue. The court of appeals found the continuous treatment doctrine applicable, noting that the patient was at all times treated by or under the direction of National Institute of Health physicians. The court seemed to assume, without discussing, that all of the patient's medical care at issue involved treatment for the same condition. *See also Tolliver v. United States*, 831 F. Supp. 558 (S.D. W. Va. 1993) (applying continuous treatment doctrine where patient was treated by doctors at Veterans Administration Hospital for post-operative mental condition).[9]

---

[9] *Tolliver* also notes that assurances that a condition will improve can be one factor in assessing whether the continuous treatment doctrine applies. *Id.* at 561. Here, Plaintiff alleges that a Valley Health physician reassured her that Draven would be fine on December 31, 2008. Adkins Aff. ¶ 10. However, this does not affect the Court's analysis because the failure to diagnose, rather than subsequent treatment, is the relevant medical problem.

This Court finds that the continuous treatment doctrine does not apply to Plaintiff's claim, because Plaintiff's claim is predicated on Valley Health's failure to properly diagnose and treat Draven's medical condition prior to birth. The "problem" underlying the complaint—failure to diagnose and respond to a blood condition that would manifest itself in injuries at birth—ended the day that Draven was born. The progression of those injuries as he ages is a distinct medical problem from the failure to diagnose the blood condition that caused the injuries in the first place. Therefore, the continuous treatment doctrine does not apply to Plaintiff's claim. Nonetheless, Plaintiff's claim survives the motion to dismiss because Plaintiff has shown there is a genuine issue of fact as to when the claim accrued, based on Plaintiff's discovery of the iatrogenic cause of her son's injuries.

## Conclusion

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss (ECF No. 23).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 11, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE